IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TED WILLIAMS ENTERPRISES, LLC, et al., | CASE NO. 4:20-CV-01018 |
| Plaintiffs, | JUDGE PAMELA A. BARKER |
| -vs- | |
| JULI PALMER, | MEMORANDUM OF OPINION AND ORDER |
| Defendant. | |

This matter comes before the Court upon the Motion to Dismiss Counterclaim ("Motion to Dismiss") of Plaintiff/Counter-Defendant Ted Williams Enterprises, LLC ("Williams"). (Doc. No. 13.) Defendant/Counter-Claimant/Third-Party Plaintiff Juli Palmer ("Palmer") filed a brief in opposition to Williams' Motion to Dismiss on December 28, 2020, to which Williams replied on January 8, 2021. (Doc. Nos. 17, 22.) For the following reasons, Williams' Motion to Dismiss (Doc. No. 13) is GRANTED.

I. **Background**

    a. Factual Allegations

Williams established the Ted Williams Enterprises, LLC Defined Benefit Plan ("Plan") effective January 1, 1998. (Doc. No. 12 at ¶ 1.)[1] Williams is the plan sponsor and plan administrator of the Plan. (*Id.*) Benefit Consultants Group, Inc. ("BCG") was the Plan's third-party administrator. (*Id.* at ¶ 3.)

---

[1] The allegations contained in Palmer's Counterclaim and Third-Party Complaint are assumed to be true solely for purposes of ruling on Williams' Motion to Dismiss.

Palmer was a participant and beneficiary of the Plan. (*Id.* at ¶ 2.) In January 2017, Palmer left her employment with Williams and requested a distribution of her retirement benefits. (*Id.* at ¶ 4.) Subsequently, BCG erroneously calculated that Palmer was entitled to a distribution of $235,460 from the Plan. (*Id.* at ¶¶ 3, 5.) On January 20, 2017, this amount was then distributed to Palmer. (*Id.* at ¶ 6.)

Initially, Palmer rolled over the distributed money into an IRA. (*Id.* at ¶ 7.) However, relying on the accuracy of the distributed amount, Palmer later took a withdrawal from her IRA, incurring taxes and penalties, and used those funds to purchase a home. (*Id.* at ¶ 9.) The remainder of the distribution has since been comingled with other assets as well. (*Id.* at ¶ 7.)

On September 30, 2019, over two and a half years since the original distribution, Williams reached out to Palmer via its counsel and demanded the return of $101,374. (*Id.* at ¶ 10.) According to Williams, the true amount to which Palmer was entitled from the Plan was $134,086, not the $235,460 she received. (*Id.* at ¶ 8.) Palmer did not take any action to cause this alleged overpayment, but simply relied on Williams and BCG to distribute the correct amount. (*Id.* at ¶ 11.)

### b. Procedural History

On May 11, 2020, Williams, along with Debra Lawlor and Karen Webber as Trustees of the Ted Williams Enterprises, LLC Defined Benefit Plan Trust Fund (collectively, "Plaintiffs"), filed a Complaint in this Court against Palmer. (Doc. No. 1.) Plaintiffs set forth a claim for unjust enrichment and a claim under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover the overpayment of pension benefits mistakenly made to Palmer. (*Id.*)

After answering the Complaint, Palmer filed a Counterclaim and Third-Party Complaint against Williams and BCG. (Doc. No. 12.) With respect to Williams, Palmer brought claims for

2

equitable relief and for negligence in the distribution of her retirement benefits. (*Id.* at ¶¶ 22-36.) In response, on December 14, 2020, Williams filed a Motion to Dismiss, seeking the dismissal of both of Palmer's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 13.) Palmer filed a brief in opposition to Williams' Motion to Dismiss on December 28, 2020, to which Williams replied on January 8, 2021. (Doc. Nos. 17, 22.)

## II. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

3

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

#### a. Negligence

In its Motion to Dismiss, Williams argues that dismissal of Palmer's negligence claim is warranted because (1) it is preempted by ERISA, (2) Palmer has failed to allege any damages recoverable in tort, and (3) the economic loss doctrine bars any recovery. (Doc. No. 13 at 2-5.) In her opposition brief, Palmer concedes that her negligence claim is preempted by ERISA and does not contest its dismissal. (Doc. No. 17 at 1.) Accordingly, the Court grants Williams' Motion to Dismiss with respect to Palmer's negligence claim.

#### b. Equitable Estoppel

In Palmer's second claim against Williams, labeled as a claim for "equitable relief," Palmer asserts that Williams should be prevented from recovering the amount of the alleged overpayment because of her reasonable and foreseeable reliance on the accuracy of the distributed amount. (Doc.

4

No. 12 at ¶¶ 28-36.)[2] Williams interprets Palmer's claim as an equitable estoppel claim under ERISA. (Doc. No. 13 at 5-6.) However, Williams argues that Palmer has not adequately stated a claim for equitable estoppel because Palmer has failed to allege any facts demonstrating that Williams was aware that the amount distributed to Palmer constituted an overpayment or that Williams made any factual representations with gross negligence or fraudulent intent. (*Id.* at 6.) In response, Palmer contends that due to the gross miscalculation of the amount due to her, a reasonable factfinder could conclude that Williams and/or BCG acted with gross negligence and that Williams was at least constructively aware of the overpayment at the time of the distribution. (Doc. No. 17 at 3-4.) Upon review of the parties' arguments, the Court concludes that Palmer has failed to state a claim upon which relief can be granted, and dismissal is appropriate.

> An equitable estoppel claim under ERISA consists of the following elements:
>
> (1) [T]here must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Stark v. Mars, Inc.*, 518 F. App'x 477, 480 (6th Cir. 2013) (citation omitted).[3]

The Sixth Circuit has interpreted the second element—whether the party to be estopped was aware of the true facts—as "requiring the plaintiff to demonstrate 'either intended deception or such

---

[2] The Court notes that Palmer does not admit that there was an overpayment and is only asking for equitable relief in the event that an overpayment did, in fact, occur. (Doc. No. 17 at 3.)

[3] "When an equitable-estoppel claim arises in the context of an unambiguous pension plan, a plaintiff must further demonstrate '[ (6) ] a written representation; [ (7) ] plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and [ (8) ] extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.'" *Stark*, 518 F. App'x at 481 (quoting *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010)).

gross negligence as to amount to constructive fraud.'" *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan*, 840 F.3d 267, 274 (6th Cir. 2016) (quoting *Paul v. Detroit Edison Co. & Mich. Consol. Gas Co. Pension Plan*, 642 F. App'x 588, 593 (6th Cir. 2016)).  Thus, the defendant's actual awareness of the misrepresentation is not required, as "this element has been interpreted broadly to allow for relief when plaintiffs show mere gross negligence." *Id.* at 274 n.6. However, it is not sufficient to show that a company "made an honest mistake, that in other words it was guilty of misfeasance, not the malfeasance that estoppel requires." *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007).

Applying this standard, courts have found that the mere fact of a mistake in the calculation of benefits, even a substantial one, is not enough to satisfy the second element of an equitable estoppel claim under ERISA.  For example, in *Zirbel v. Ford Motor Co.*, Ford made a lump sum payment to the former spouse of a participant in Ford's retirement plan of $351,690.  980 F.3d 520, 522 (6th Cir. 2020).  Four years later, an audit by Ford revealed that the payment should have been just $108,500. *Id.*  The former spouse sued Ford, arguing Ford should be equitably estopped from recovering the overpayment, but the Sixth Circuit affirmed the district court's summary judgment ruling in favor of Ford, holding:

> She has not shown, for one, that Ford's inclusion of an incorrect retroactive-payment amount "contain[ed] an element of fraud, either intended deception or such gross negligence ... as to amount to constructive fraud." *Mich. Laborers' Health Care Fund*, 209 F.3d at 591 (quotation omitted).  Ford did not know that it had the wrong number. At most, Zirbel has shown that the company made a mistake—that it was guilty of misfeasance, not the malfeasance that estoppel requires.

*Id.* at 525; *see also Geith v. Sprint Communications Co. L.P.*, No. 1:12 CV 934, 2014 WL 2803065, at *3 (N.D. Ohio June 19, 2014) (holding the plaintiff could not establish the second element of his estoppel claim because the evidence showed that the defendant "made a mistake, nothing more,"

when it incorrectly informed the plaintiff that he was entitled to an annuity under "special early retirement"); *Spiewacki v. Ford Motor Co.-UAW Ret. Bd. of Admin.*, 18 F. Supp. 3d 902, 909 (N.D. Ohio 2014) ("Plaintiff simply says, 'That the mistake was not made negligently ... defies logic.' Mistakes can happen despite the exercise of due care.  Therefore, Plaintiff has not produced sufficient evidence to create a triable issue on the element of Defendants' awareness that the initial estimated years of service was known to be wrong.") (footnote omitted).  The Sixth Circuit also has held that a company's reliance on assurances from a third-party regarding the calculation of benefits did not rise to the level of malfeasance required for an estoppel claim even though those assurances ultimately proved inaccurate.  *Stark*, 518 F. App'x at 482.

In this case, Palmer alleges that after she requested a distribution of her retirement benefits under the Plan, BCG incorrectly calculated the amount to which she was entitled, and Williams distributed this incorrect amount to her.  (Doc. No. 12 at ¶¶ 3-6.)  While the error was substantial in that Palmer allegedly received over $100,000 more than the correct amount, Palmer has not alleged any facts from which it could be inferred that Williams made anything other than an honest mistake.  To wit, Palmer has not alleged that Williams was actually aware of the correct amount or that Williams intended to defraud or deceive her in any way.  Nor are there any allegations regarding the manner in which Palmer's benefits were miscalculated that would suggest that Williams was grossly negligent in distributing the incorrect amount.  Instead, Palmer's allegations indicate that Williams simply relied on the calculations of its third-party administrator, BCG.  (*See id.*)  Consequently, the Court finds that Palmer has failed to plead facts sufficient to show that Williams' actions constituted such gross negligence as to amount to constructive fraud to satisfy the second element of her equitable estoppel claim.

Palmer relies on *Deschamps* in support of her contention that she has adequately stated a claim, but that case is easily distinguishable. (Doc. No. 17 at 3-4.) In *Deschamps*, before accepting a transfer to a position at a different facility, the plaintiff expressed concerns about losing his pension credit, but was repeatedly assured by members of the defendant's management team that the transfer would not jeopardize his pension. 840 F.3d at 270. The plaintiff's transfer offer also was made with an express representation regarding his service date for his pension, which was then repeated for more than a decade in benefits summaries after he accepted the new position. *Id.* at 275. When the plaintiff subsequently discovered that the defendant had changed his service date, he brought suit, setting forth a claim for equitable estoppel. *Id.* at 271. Upon review, the Sixth Circuit held that the defendant was grossly negligent, reasoning that only the defendant was in the position to know the true facts regarding the plaintiff's pension and that the defendant failed to notify him of those facts "despite his repeated initial inquiries about his pension." *Id.* at 275. In contrast to the situation in *Deschamps*, Palmer has not alleged that she made repeated inquiries regarding the accuracy of her retirement distribution or that Williams repeatedly assured her of its accuracy. Rather, Palmer alleges a single miscalculation unaccompanied by any other facts to support a finding of gross negligence, which is insufficient to state a claim of equitable estoppel under ERISA. As a result, dismissal of Palmer's equitable estoppel claim is appropriate.

**IV.  Conclusion**

For the reasons set forth above, Williams' Motion to Dismiss (Doc. No. 13) is GRANTED.

**IT IS SO ORDERED.**

                                             *s/Pamela A. Barker*
                                             PAMELA A. BARKER
Date:  March 31, 2021                 U. S. DISTRICT JUDGE